## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Civil Action No. 1:21-CV-21537-JAL

| | |
|---|---|
| ROY S. SHIVER, JR., | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) |
| THE CITY OF HOMESTEAD, Florida | ) |
| GEORGE GRETSAS, | ) |
| TOM MEAD, | ) |
| RICKY RIVERA, | ) |
| **Defendants.** | ) |
| _____ | / |

## SECOND AMENDED COMPLAINT

Plaintiff, ROY S. ("STEVE") SHIVER, JR., sues Defendants, as follows:

1.     This is an action to recover compensatory damages in excess of the jurisdictional limit of this Court for violations of 42 U.S.C. §1983 *et seq.* against Defendants for deprivation of rights, privileges and immunities secured by the federal Constitution.

## JURISDICTION AND VENUE

2.     The City of Homestead ("City"), former City Manager George Gretsas ("Gretsas") and Homestead Detectives Ricky Rivera ("Rivera") and Tom Mead ("Mead"), all cooperated to violate Plaintiff's civil rights, as alleged in detail below.

3.     Through an unlikely turn of events in the Summer of 2020, proof of the violations was found on flash-drives left in the office of ex-City Manager Gretsas when he was fired from a subsequent job in the City of Delray Beach, Palm Beach County, Florida.  On the flash-drives, Defendant Gretsas had maintained Dossiers on his perceived enemies, including a Dossier on Plaintiff with false, defamatory, and/or illegally obtained information.  Defendant Gretsas

strategically deployed and disclosed such information to third parties to retaliate against Plaintiff's exercise of his First Amendment rights.

4.      The Dossier and its contents, themselves public records led the way to further public records requests.  The information so developed, along with emails received from a local resident intimately connected with the inner circle of official power in City, showed the breadth and extent of the deprivations of Plaintiff's rights, privileges and immunities secured by the U.S. Constitution described herein.

5.      The City Dossier and its contents are public records, as they were created within the scope of Defendant Gretsas' official employment to communicate, perpetuate, or formalize knowledge. Numerous portions of the Dossier containing private and false information concerning Plaintiff, were later strategically disclosed, and published by Defendant Gretsas within the scope of his employment by the City.

6.      The deprivations and violations of law described herein, were part of an ongoing pattern, custom, and/or practice, in the City of adverse action against Plaintiff until at least December 2019 and were only discovered in their full extent in the summer of 2020.

7.      The said pattern, custom, and/or practice having the force and effect of law, i.e., an unwritten policy, caused Plaintiff's damages.

8.      This Court has jurisdiction over the subject matter and the persons in this action pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 (violation of Civil Rights); 28 U.S.C. § 1331 (civil actions arising under the Constitution, laws, or treaties of the United States); and the First and Fourteenth Amendments to the United States Constitution.

9.      Venue in this Court is proper under 28 U.S.C. § 1391.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

## INTRODUCTION

10.     Defendant George Gretsas was the City Manager of Homestead, Florida, from November 22, 2010, to January 3, 2020.  Gretsas misused the power and authority of the state to illegally gather, write up, maintain, and distribute private and/or false information for a number of individuals for whom he maintained City Dossiers, including Plaintiff.

11.     Gretsas used City resources without public purpose, including police detectives and tax-payer funded city attorneys to gather and maintain in a Dossier information about Plaintiff and others, and later disseminated such information strategically to retaliate against Plaintiff.  But all of the alleged investigations of Plaintiff were retaliatory and ultimately closed without charges.

12.     The City of Homestead, by and through its manager, police chief, the mayor at the time, as well as City Council members Judy Waldman, Jimmie Williams, Jon Burgess and Elvis Maldonado, knew of this practice and policy, and/or acquiesced to such unlawful behavior. Accordingly, every possible final policy maker respecting the actions of the Homestead Police Department ("HPD") knew of this practice and policy, and/or acquiesced to such unlawful behavior. Gretsas was the City's ultimate policy maker on these matters, and upon information and belief either ordered or personally carried out the retaliatory acts complained of herein.

13.     Additional individuals and entities became aware of information in the illegally gathered and maintained Dossiers, and became aware of the retaliatory conduct of Homestead's policymakers, and wittingly or unwittingly accepted and enabled the Defendants' conduct. Plaintiff reserves his right to amend these pleadings if it is found in discovery that any such individual actively participated in the conduct leading to this action.

CLAUDIO RIEDI, P.A.

1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

14.     The willful and wanton violations of the Plaintiff's legal rights under color of state law shock the conscience, requiring compensatory and/or punitive damages against those participating, as permitted by law.

15.     Defendants Gretsas and the City Council, all had supervisory liability in that they were authorized decision-makers who either ordered the constitutional violations alleged below or were aware of them and countenanced them, and thus proximately caused Plaintiff's damages.

16.     Defendant Gretsas explicitly directed employees and agents of the City of Homestead to perpetrate the illegal actions set forth below. In the alternative, the City Council and/or Defendant Gretsas all failed to intervene and to stop the known unlawful actions of their subordinates. In fact, Defendant Gretsas personally participated in the retaliatory publishing of defamatory material, which he knew to be false or misleading, and published with actual and express malice.

17.     Defendant Gretsas, and/or City Council's ordering of and/or failure to stop such unlawful conduct in their supervisory capacities caused the violation of Plaintiff's clearly established constitutional rights of which a reasonable person would have known, all as more fully set forth below. A reasonable person in the situation the Defendants, and the Supervisors, confronted would have known that the conduct set forth herein was unlawful.

### THE PLAINTIFF

18.     Plaintiff was at all times material to the allegations a citizen and resident of Miami Dade County, Florida.  A life-long resident of Homestead, he served three terms on the Homestead municipal council, two as mayor. In 2001 he was appointed Manager for Miami-Dade County, serving until 2004, when he went into the private sector.  Plaintiff later served a brief time as

CLAUDIO RIEDI, P.A.

1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

Manager of the City of Opa-locka, Florida, and subsequently as Executive Director with the South Florida Police Benevolent Association ("SFPBA").

19.     Throughout his career, Plaintiff remained outspoken about politics and civic causes in his hometown, and thus became a target of the retaliatory conduct by Defendants.

20.     Upon information and belief, Defendant Gretsas began assembling a Dossier against Plaintiff as soon as Plaintiff began to speak against Gretsas publicly and online and continued at least through 2019. Plaintiff, unbeknownst to him, was also included in another Dossier prepared against a different perceived adversary of Gretsas, HPD Captain William Rea.

21.     Throughout this time, Defendant Gretsas, released false and misleading information he had gathered and created against Plaintiff within the scope of his employment with the City, causing Plaintiff to ultimately be terminated from his job with an unrelated employer, publicly humiliated and ultimately losing his race for mayor.

## THE DEFENDANTS

22.     Defendant City of Homestead is a Florida municipal corporation, located within Miami-Dade, Florida, and is a "person" for purposes of §1983.

23.     Defendant, George Gretsas, was at all times material City Manager of Homestead. He was the chief executive officer of City, having ultimate and final policy-making authority and power over all personnel decisions, public records policy, and over policing policy. Under Homestead's Charter, the City Manager is appointed by, and serves at the pleasure, of the City Council and Mayor of Homestead.

24.     Defendants Mead and Rivera at all times material were police detectives within the HPD. Within the scope of their employment, they illegally investigated Plaintiff outside of official channels and violated Plaintiff's rights in other ways, as set forth herein.

5

25.     Plaintiff's primary cause of action is one for violation of his constitutional rights under color of state law:  Plaintiff engaged in constitutionally protected free speech, and Defendants retaliated against his well-established rights in violation of law.

## FACTS

### Plaintiff's Protected Activities:

**Protected Activity I – Plaintiff published online and publicly about waste, fraud, and abuse within the City's government, including about Defendant Gretsas:**

26.     On May 20, twice on May 24, June 24, and July 5, 2017, Plaintiff in Facebook posts criticized and raised questions about significant construction projects proposed or supported by Gretsas and other government abuse in Homestead.  Also in 2017, Plaintiff publicly spoke to various persons about the same issues.

**Protected Activity II – Confronting members of the HPD about improper policing of Plaintiff in Homestead:**

27.      On May 20th, 2019, Plaintiff wrote on Facebook about the defamation and police harassment of himself and family and complained to HPD Captain Scott Kennedy that he was tired of getting maligned and defamed by Defendant Gretsas. Thereafter, Plaintiff spoke again to Captain Scott Kennedy at Plaintiff's place of business and similarly expressed his frustrations. Likewise, beginning on July 1, 2019, Plaintiff communicated with Defendant Mead via text messages and on the telephone, requesting that the HPD should leave him alone.

**Protected Activity III – Plaintiff Running for City Mayor:**

28.     On July 1, 2019, Plaintiff announced a run for mayor of Homestead, and spoke out freely about his position on political and civic issues, criticizing Homestead's government and management at the time. Plaintiff communicated his criticisms via Facebook, in public speeches, campaign events, and personal conversations.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

**Defendants' conduct in retaliation to Plaintiff's protected activity**

**Adverse Action I – Improperly gathering information about Plaintiff:**

29.      On May 22, 2017, two days after Plaintiff began to speak out (*see* ¶26, supra), Homestead citizen Pat Pascuzzo wrote an email to Miami Herald Reporter Monique O. Madan, with the subject "More Info Shiver Stuff:" In the email, Mr. Pascuzzo wrote: "The City of Homestead has a detective that serves as the FBI liaison, his name is Tom Mead.  Tom Mead is in charge of the Shiver/Homestead investigation. He has brought the FBI up to date because they needed subpoenas for financials."

30.      On the flash drives left behind by Defendant Gretsas after his firing from the City of Delray Beach in 2020, and from targeted public records request thereafter, Plaintiff found evidence of the following instances of improper information gathering by HPD officers at the direction of or with the knowledge of Defendant Gretsas:

31.      June 4, 2018, Defendant Gretsas prepared a memorandum seeking an "inventory of every failure [Plaintiff] has had."  In the memorandum, City manager Gretsas ordered Defendants Mead and Rivera to investigate numerous legal cases in Tennessee and North Carolina, and to access all negative information they could find on Plaintiff. The memorandum also asked for negative information on Plaintiff's father, Roy S. Shiver, councilman in neighboring Florida City. This memorandum was a blueprint for the retaliatory investigation to be undertaken against Plaintiff.

32.      Defendants Rivera and Mead complied with Defendant Gretsas' instructions and searched for and seized information concerning Defendant Shiver.  They, and possibly other members of the HPD, used municipal resources to follow and investigate Plaintiff, his wife, his

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

father, and his associates and friends without probable cause or reasonable suspicion of illegal activities, solely for the purpose of developing damaging information about Plaintiff.

33.     HPD officers took secret photographs, entirely outside of an official investigation into any wrongdoing, far outside City limits, of Plaintiff's associates placing election signs throughout Miami-Dade County. Employees of the HPD thus acted as a rogue unit controlled by Defendant Gretsas, with his explicit knowledge and/or approval, for purposes not related to the legitimate exercise of police power.

34.     Detective Rivera illegally accessed Plaintiff's Drivers Information seeking adverse information concerning Plaintiff.  Defendant Rivera knowingly obtained, disclosed or used the personal information of Plaintiff from the DAVID/NCIC/FCIC motor vehicle records for a use not permitted and by making a false representation to obtain information negative concerning Plaintiff. Doing so, he violated 18 U.S.C. §2722 (Prohibition on release and use of certain personal information from state motor vehicle records related to illegal searches of restricted government databases).

35.     Further, Defendant Mead, who was the HPD's FBI Liaison, actually obtained from federal resources two Banking Suspicious Activity Reports ("SARs") regarding Plaintiff, and then sent these confidential reports to City officials and to Defendant Gretsas via Gretsas' personal Gmail account.

36.     Perhaps the most depraved discovery found in the flash drives and emails retrieved in public information requests was a scheme spear-headed by Defendant Gretsas to collect physical "evidence" from the garbage of Plaintiff.  Email chains obtained in public records requests clearly show that Plaintiff's garbage was "collected" by a private individual outside of the City boundaries, and then transported to a location inside the City limits and placed in the back of a

8

pick-up truck, to be collected there by HPD.  The garbage bag allegedly contained straws with residue of cocaine and other incriminating items. Gretsas willingly accepted the garbage from the private individual who claimed to have collected it from Plaintiff's house, and integrated some information gleaned from Plaintiff's alleged trash into his PowerPoint presentations and lengthy memorandum, all in an effort to harm Plaintiff.

37.     Defendant Gretsas also requested, and Homestead City attorneys Weiss Serota Helfman obtained and provided to Gretsas, transcripts of a deposition given by Plaintiff in a personal bankruptcy case.

**Adverse Action II – Creating public records with false or misleading information concerning Plaintiff:**

38.     On or about May 15, 2019, Defendant Gretsas created a 228-page PowerPoint presentation, entitled "Miami Herald-Shiver Draft," with negative information about Plaintiff, spanning 20 years of Plaintiff's public service career.  Much of the information was taken out of context and was false and/or misleading. The presentation also contained false information against former HPD Captain William Rae.

39.     The 228-page PowerPoint presentation also contained false information concerning Plaintiff's father and business associates, and other false or misleading information.  For example, the presentation contained a section called "Felon Sign Brigade" with photographs taken by HPD officers of election signs being legally set up by Plaintiff's associates in Miami-Dade County.

40.     Defendant Gretsas also created a 30-page PowerPoint presentation for Reporter Michael Putney, containing more misrepresentations concerning Defendant Gretsas.

41.     Also on the flash drives was a crime-syndicate chart showing an entirely fake money laundering investigation against former Homestead Police Captain William Rea, in 2013,

where Plaintiff Shiver was shown as a co-conspirator in the non-existing money laundering scheme.  In reality, there never was such an investigation, and there definitely never was any money laundering activity on the part of Plaintiff. The fake money-laundering flow-chart also included Plaintiff's father Roy S. Shiver and photos of business in neighboring Florida City, all without any connection to illegal activity whatsoever. The chart bears the misleading and libelous legend "at this time no subpoenas obtained or served."

42.     One of the more shocking discoveries on Gretsas' flash drives was a four-page fact sheet on Plaintiff, containing numerous pieces of personal information, such as complete credit card numbers and passwords, complete bank account numbers, Plaintiff's children's health insurance information, social security numbers, prescriptions and medications of his entire family, and the false allegation that cocaine was found in Plaintiff's possession.

43.     On June 15, 2018, Defendant Mead sent an email entitled "interesting reading" to Defendant Gretsas' private email address, bearing Detective Mead's FBI signature block, attaching the illegally gathered SARs concerning Plaintiff. The email with the attached SARs was also located on Defendant Gretsas' City flash drives. While Plaintiff's activity reported in the SARs was not improper, the mere possession by and sharing of SARs by Defendant Mead with Manager Gretsas and the City is likely illegal/felonious.  Using private emails to circumvent public records law also violated Florida law but did not prevent the information from becoming a public record, as these records and communications became part of the official business of City and were meant to communicate, perpetuate, or formalize knowledge.

44.     Defendant Gretsas further prepared a 109-page memorandum concerning Plaintiff, alleging that the HPD was conducting three separate criminal investigations against Plaintiff. The memorandum contained false allegations of drug use by Plaintiff.

CLAUDIO RIEDI, P.A.

1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

45.     Also placed in the Homestead public records was a copy of the deposition given by Plaintiff in a personal bankruptcy proceeding.

**Adverse Action III – Targeted disclosure of illegally gathered information concerning Plaintiff to the press and the public.**

46.     Defendant Gretsas repeatedly communicated false and misleading information about Plaintiff he had gathered with City resources to third parties, including without limitation Homestead's mayor and council, civic leaders, local residents, and at least twice to the Miami Herald.

47.     Upon information and belief, the 228-page PowerPoint presentation entitled "Miami Herald-Shiver Draft" was sent by Gretsas to the Miami Herald.  In turn, the Miami Herald published highly negative articles on May 22, 2018, and on May 26, 2018, which included information and photographs from the 228-page PowerPoint presentation.

48.     A portion of the 109-page memorandum described above in paragraph 44, was sent by Gretsas' assistant, Jason King, to Monique O. Madan on or about June 13, 2019. The email from Jason King to Monique O. Madan contained the following statement, along with excerpts of the 109-page memorandum:

> This report has been written in response to false allegations made by Steve Shiver (a.k.a Roy Stephen Shiver, Jr., a/k/a Roy S. Shiver, a.k.a. Roy S. Shiver, Jr., a.k.a. Stephen Shiver, a.k.a. Roy Stephen Shiver, a.k.a. Shiver Roy S, Jr.) that he has been the target of improper policing by the Homestead Police Department (HPD).  His claims are without merit.  Mr. Shiver has been the subject of three separate, unrelated and properly conducted criminal investigations by the Homestead Police Department over the past two and a half years. Two of the unrelated cases are still open and one has been closed. The first report will only address the closed case, in which Mr. Shiver was the subject of a narcotics investigation. The two other cases are still active.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

49.     On July 1 and July 3, 2019, just after Plaintiff Shiver had announced his run for Homestead Mayor, Defendant Gretsas sent the 109-page memorandum to the Mayor and City Council of Homestead via the Homestead email system.

50.     On July 3, 2019, Gretsas' assistant Jason King sent the final version of the 109-page memorandum to the Miami Herald's Monique O. Madan, copying Defendant Gretsas with the subject "as per your request."

51.     Also on July 3, 2019, at 8.57 am, Homestead Citizen Pat Pascuzzo emailed the Miami Herald's Monique O. Madan asking whether she had received a copy of the Shiver City of Homestead Police Investigation.  Monique O. Madan replied back at 8:58 am: "you're late."

52.     On the very same day, July 3, 2019, the Miami Herald published another negative article based upon the false and/or misleading information in Defendant Gretsas' 109-page memorandum.

53.     Defendant Gretsas also presented the information he and officers of the HPD had gathered to civic leaders in Homestead.  Some of the presentations by Gretsas took place in City offices, where Defendant Gretsas disclosed selected materials from Plaintiff's Dossier to police chief Alexander Rolle, then-mayor Jeffrey Porter , City Council members Judy Waldman, Jimmie Williams, Jon Burgess and Elvis Maldonado, as on information and belief also to other private persons.

**Adverse Action IV – Contacting Plaintiff's Employer with negative information:**

54.     In the June 4, 2018, memorandum by Defendant Gretsas (see ¶31, above), Defendant Gretsas articulated 18 specific derogatory points he wanted made by to Plaintiff's employer.  After the June 4, 2018, memorandum was prepared, Homestead Police Captain Scott Kennedy, under order and/or direction of Defendant Gretsas, contacted Steadman Stahl, President

12

of the SFPBA, where Plaintiff was employed at the time. Upon information and belief, Captain Scott Kennedy or other HPD officers gave derogatory information concerning Plaintiff to Plaintiff's employer.

**COUNT I**
**VIOLATION OF PLAINTIFF'S CIVIL RIGHTS**
**against Detective Ricky Rivera for improper investigation of Plaintiff**
**in retaliation for Plaintiff's Protected Activities I and II.**
**42 U.S.C. §1983**

55.    Plaintiff realleges and reavers paragraphs 1 – 3, 6-9, 18-19, 24-28, and 29-34, as though fully set forth herein.

56.    Plaintiff is a citizen for purposes of 42 U.S.C. §1983.

57.    Defendant Rivera by and though his actions set forth herein, violated Plaintiff's rights protected by the First Amendment to the U.S. Constitution.

58.    Defendant Rivera, sued in his individual capacity, is a "person" according to 42 U.S.C. §1983, and at all times material hereto, was employed by Defendant City.

59.    Plaintiff exercised his First Amendment rights to speech, press, and petition by speaking out critically online and to individuals who would listen about waste, fraud, and/or abuse by George Gretsas and within City, and spoke about police harassment he endured. *See* allegations at ¶¶26-28.

60.    Defendant Rivera retaliated against Plaintiff by conducting a retaliatory and clandestine investigation without a legitimate law enforcement purpose, keeping it off the books, but providing the results of this investigation which included false and/or misleading statements and/or arrangements of documents to his supervisor Gretsas. Defendant Rivera was directed to perform this improper investigation by Defendant Gretsas and/or Chief Rolle, and Defendant

13

Rivera was aware that the Dossier he helped construct contained false and misleading material and would be used to harm and defame Plaintiff. *See* allegations at ¶¶30-34.

61.    Defendant Rivera's retaliatory actions would chill a man of ordinary firmness in the exercise of well-established rights.

62.    Defendant Rivera would not have retaliated against Plaintiff, but for Plaintiff's exercise of his well-established First Amendment rights, and there is a causal connection between the exercise of Plaintiff's rights and the adverse conduct of Defendant Rivera.

63.    Defendant Rivera's actions in violating Plaintiff's constitutional rights were done under color of state law, and were malicious and wanton, displaying deliberate indifference to the rights and liberties of Plaintiff.

64.    As a direct and proximate result of Defendant Rivera's actions, Plaintiff suffered damages from the denial of his constitutional rights under the First Amendment to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays that this Court will:

a.   Enter judgment for Plaintiff against Defendant Rivera for compensatory, nominal and punitive damages.

b.   Award Plaintiff the costs of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

c.   Grant such other and further relief as is just.

**COUNT II**
**VIOLATION OF PLAINTIFF'S CIVIL RIGHTS**
**against Detective Tom Mead for improper investigation of Plaintiff**
**in retaliation for Plaintiff's Protected Activities I and II.**
**42 U.S.C. §1983**

14

65.     Plaintiff realleges and reavers paragraphs 1 – 3, 6-9, 18-19, 24-35 and 43, though fully set forth herein.

66.     Plaintiff is a citizen for purposes of 42 U.S.C. §1983.

67.     Defendant Mead by and though his actions set forth herein, violated Plaintiff's rights protected by the First Amendment to the U.S. Constitution.

68.     Defendant Mead, sued in his individual capacity, is a "person" according to 42 U.S.C. §1983, and at all times material hereto, was employed by City of Homestead.

69.     Plaintiff exercised his First Amendment rights to speech, press, and petition by speaking out critically online and to individuals who would listen about waste, fraud, and/or abuse by George Gretsas and within City, and spoke about police harassment he endured. *See* ¶¶26-28.

70.     Defendant Mead retaliated against Plaintiff by conducting or participating in a retaliatory and clandestine investigation without a legitimate law enforcement purpose, keeping it off the books, but providing the results of this investigation which included false and/or misleading statements and/or arrangements of documents to his supervisor Gretsas.  Mead was directed to perform this improper investigation by Defendant Gretsas and/or Chief Rolle, and Mead was aware that the Dossier he helped construct contained false and misleading material and would be used to harm and defame Plaintiff. *See* ¶¶31 and 34-35, and 43.

71.     Defendant Mead's retaliatory actions would chill a man of ordinary firmness in the exercise of well-established rights.

72.     Defendant Mead would not have retaliated against Plaintiff, but for Plaintiff's exercise of his well-established First Amendment rights, and there is a causal connection between the exercise of Plaintiff's rights and the adverse conduct of Defendant Rivera.

15

73.     Defendant Mead's actions in violating Plaintiff's constitutional rights were done under color of state law, and were malicious and wanton, displaying deliberate indifference to the rights and liberties of Plaintiff.

74.     As a direct and proximate result of Defendant Mead's actions, Plaintiff suffered damages from the denial of his constitutional rights under the First Amendment to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays that this Court will:

a.     Enter judgment for Plaintiff against Defendant Mead for compensatory, nominal, and punitive damages.

b.     Award Plaintiff the costs of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

c.     Grant such other and further relief as is just.

### COUNT III
### VIOLATION OF PLAINTIFF'S CIVIL RIGHTS against George Gretsas
### for illegally gathering information on Plaintiff
### in retaliation for Plaintiff's Protected Activities I, II and III.
### 42 U.S.C. §1983

75.     Plaintiff realleges and reavers paragraphs 1 – 6, 8-21, 23, 26-28, and 30-37, as though fully set forth herein.

76.     Plaintiff is a citizen for purposes of 42 U.S.C. §1983.

77.     Defendant Gretsas by and though his actions set forth herein, violated Plaintiff's rights protected by the First Amendment to the U.S. Constitution.

78.     Defendant Gretsas, sued in his individual capacity, is a "person" according to 42 U.S.C. §1983, and at all times material hereto, was employed by City of Homestead.

79.     Plaintiff exercised his First Amendment rights to speech, press, and petition by speaking out critically online and to individuals who would listen about waste, fraud, and/or abuse

16

by Defendant Gretsas and within City and spoke out about police harassment he endured. *See* ¶¶26-28.

80.     Defendant Gretsas retaliated against Plaintiff by ordering his subordinates to perform a retaliatory and clandestine investigation without a legitimate law enforcement purpose, keeping it off the books, but providing the results of this investigation which included false and/or misleading statements and/or arrangements of documents to him. Gretsas then published all or parts of the Dossier he had ordered to be constructed containing false and misleading material – to employees, elected officials, and residents to harm and defame Plaintiff.  *See* ¶¶30-37.

81.     Defendant Gretsas' retaliatory actions would chill a man of ordinary firmness in the exercise of well-established rights.

82.     Defendant Gretsas would not have retaliated against Plaintiff, but for Plaintiff's exercise of his well-established First Amendment rights, and there is a causal connection between the exercise of Plaintiff's rights and the adverse conduct of Defendant Gretsas.

83.     Defendant Gretsas' actions in violating Plaintiff's constitutional rights were done under color of state law, and were malicious and wanton, displaying deliberate indifference to the rights and liberties of Plaintiff.

84.     As a direct and proximate result of Defendant Gretsas' actions, Plaintiff suffered damages from the denial of his constitutional rights under the First Amendment to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays that this Court will:

a.  Enter judgment for Plaintiff against Defendant Gretsas for compensatory, nominal and punitive damages.

b.  Award Plaintiff the costs of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue  |  Suite 507  |  Miami, Florida 33131  |  Tel. 305 760 8544  |  Fax. 305 356 5720  |  CriediPA@gmail.com

c.   Grant such other and further relief as is just.

**COUNT IV**
**VIOLATION OF PLAINTIFF'S CIVIL RIGHTS  against George Gretsas**
**for creating and publishing false or misleading information concerning Plaintiff**
**in retaliation for Plaintiff's Protected Activities I, II. And III.**
**42 U.S.C. §1983**

85.   Plaintiff realleges and reavers paragraphs 1 – 6, 8-21, 23, 26-28, and 38-45 as though fully set forth herein.

86.   Plaintiff is a citizen for purposes of 42 U.S.C. §1983.

87.   Defendant Gretsas by and though his actions set forth herein, violated Plaintiff's rights protected by the First Amendment to the U.S. Constitution.

88.   Defendant Gretsas, sued in his individual capacity, is a "person" according to 42 U.S.C. §1983, and at all times material hereto, was employed by City of Homestead.

89.   Plaintiff exercised his First Amendment rights to speech, press, and petition by speaking out critically online and to individuals who would listen about harassment and retaliatory following and investigations by HPD, due to his speaking about on waste, fraud, and/or abuse earlier, and Defendant Gretsas involvement therein. ¶¶26-28. Before and after running for office, Plaintiff spoke out about police harassment he endured.

90.   Defendant Gretsas retaliated against Plaintiff by preparing false and/or misleading information concerning Plaintiff in the Dossier, and by communicating the false and misleading materials to employees, elected officials, and residents to harm and defame Plaintiff. Defendant Gretsas this time provided all or parts of the Dossier to the Miami Herald who published the false and misleading information provided by Defendant Gretsas publicly damaging Plaintiff's reputation. ¶¶38-45.

18

91.     Defendant Gretsas' retaliatory actions would chill a man of ordinary firmness in the exercise of his well-established rights.

92.     Defendant Gretsas would not have retaliated against Plaintiff, but for Plaintiff's exercise of his well-established First Amendment rights, and there is a causal connection between the exercise of Plaintiff's rights and the adverse conduct of Defendant Gretsas.

93.     Defendant Gretsas' actions in violating Plaintiff's constitutional rights were done under color of state law, and were malicious and wanton, displaying deliberate indifference to the rights and liberties of Plaintiff.

94.     As a direct and proximate result of Defendant Gretsas' actions, Plaintiff suffered damages from the denial of his constitutional rights under the First Amendment to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays that this Court will:

a.     Enter judgment for Plaintiff against Defendant Gretsas for compensatory, nominal and punitive damages.

b.     Award Plaintiff the costs of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

c.     Grant such other and further relief as is just.

**COUNT V**
**VIOLATION OF PLAINTIFF'S CIVIL RIGHTS against CITY OF HOMESTEAD**
**42 .S.C. §1983**

95.     Plaintiff realleges and reavers paragraphs 1 through 12, 14 through 25, and 26-28, and 40-54, as though fully set forth herein.

96.     Plaintiff is a citizen for purposes of 42 U.S.C. §1983.

CLAUDIO RIEDI, P.A.
1200 Brickell Avenue | Suite 507 | Miami, Florida 33131 | Tel. 305 760 8544 | Fax. 305 356 5720 | CriediPA@gmail.com

97.     This is an action by Plaintiff against City for redress due to the deprivation, under color of state law, statute, custom or usage, of rights, privileges and immunities secured to Plaintiff by the Constitution and the laws of the United States for deprivation of his rights. The deprivations were ongoing from 2017 to 2019 were in retaliation for Plaintiff's exercise of his free speech rights as set forth at paragraphs 26 to 28, above, to wit: (a) reporting and publishing of alleged waste, fraud, and/or abuse, (b)  publishing about the resultant harassment and retaliation by HPD; and (3) Plaintiff's speaking out while running for Homestead mayor in 2019.

98.     The unlawful actions alleged herein violate the First Amendment to the U.S. Constitution.

99.     Defendant City is a "person" according to 42 U.S.C. §1983 and is liable for unlawful actions ratified with the prior knowledge of - as well as the policies, customs, and practices established and/or ordered and participated in by - its final policy makers.

100.    Defendant City, through its final policy makers, would not have retaliated against Plaintiff, but for Plaintiff's exercise of his First Amendment rights, and there is a causal connection between the exercise of his rights and the adverse conduct.

101.    Defendant City's repeated actions in violating Plaintiff's constitutional rights under color of state law were malicious and wanton, displaying deliberate indifference to the rights, liberties, and immunities of Plaintiff.

102.    Defendant City's repeated actions displayed a continuity of purpose.

103.    The retaliatory animus and/or indifference of City's final policy makers as to the retaliatory activity against Plaintiff was the proximate cause and the driving force behind the alleged adverse conduct and resultant damages. This occurred not just by ordering the unlawful and retaliatory acts before they occurred, but by prior ratification of the reasoning as well.

20

104.    There is thus a causal connection between Plaintiff's repeated exercise of his first amendment rights, and the City's repeated retaliatory conduct – ordered, acquiesced to, and ratified by the final policy makers.

105.    Defendant City's final policy makers would not have ordered their subordinates to repeatedly retaliate against Plaintiff, and/or directly retaliated against Plaintiff themselves, but for Plaintiff's repeated exercise of his First Amendment rights.

106.    Defendant City's actions would chill a man of ordinary firmness in the exercise of well-established First Amendment rights.

107.    Defendant City, acting through its Manager, and possibly Police Chief and Council, created and ordered a custom of abuse, having the force and effect of law, which constituted and evinced deliberate indifference to Plaintiff's constitutional rights.

108.    Defendant City's custom and practice consisted of investigating Plaintiff, using official resources through improper channels and procedures, and repeatedly communicating the improperly gathered information with a false narrative to harm Plaintiff's person, reputation, and career, and even going so far as to contact Plaintiff's employer leading to his forced resignation, all in retaliation for Plaintiff's continued exercise of his first Amendment rights to speech, press, and petition.

109.    Defendant City's custom and pattern of constitutional violations - ordered, commanded, committed, endorsed, and acquiesced to with the full knowledge of the final policy makers - was the driving force behind Plaintiff's injuries alleged herein.

110.    Defendant City's custom and pattern is further elucidated by similar violations of constitutional rights with regard to William Rea, Eric, and Vanessa McDonough, and Ednamarie Hernandez, which are more fully alleged in the original Complaint in this matter and in separate

21

legal actions brought by them against the various Defendants named herein.  In each described case, the City, by and through its ex-manager Gretsas and/or Chief Rolle and Council, and their subordinates, retaliated against various Plaintiffs for their exercise of First Amendment Rights.

111.    As a direct and proximate result of the actions of City's final policy makers, Plaintiff suffered damages from the denial of his constitutional rights under the First Amendment to the United States Constitution and is accordingly entitled to relief under 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays that this Court will

    a.   Enter judgment for Plaintiff and against City for compensatory and nominal damages.

    b.   Award Plaintiff the costs of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

    c.   Grant such other and further relief as is just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues so triable.

Respectfully submitted,

CLAUDIO RIEDI, P.A.
Counsel for Plaintiff Steve Shiver
1200 Brickell Avenue, Suite 507
Miami, Florida 33131
Telephone: 305.760.8544
Facsimile: 305.356.5720

By: /s/ *Claudio Riedi, Esq.*
CLAUDIO RIEDI, ESQ.
Florida Bar No. 984930
CriediPA@gmail.com

OF COUNSEL
DEXTER W. LEHTINEN, ESQ
Florida Bar No. 265551
Email: dwlehtinen@aol.com

22