UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-CV-21537-JAL

ROY S. SHIVER, JR.,

                   *Plaintiff,*

v.

THE CITY OF HOMESTEAD, FLORIDA,
*et al.,*

                   Defendants.

_____/

**HOMESTEAD DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

Defendants, City of Homestead ("City"), Tom Mead ("Det. Mead"), and Ricky Rivera ("Det. Rivera") (collectively, "Homestead Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(6), file this Motion to Dismiss the Second Amended Complaint [ECF No. 32], filed by Plaintiff, Roy S. Shiver, Jr. ("Plaintiff"), and state as follows:[1]

**OVERVIEW**

Plaintiff's Second Amended Complaint ("Complaint") follows the Court's order granting the Homestead Defendants' motion to dismiss [ECF No. 21] (as well as the motion to dismiss filed by Defendant, George Gretsas [ECF No. 22]) in part. Specifically, the Court previously found that Plaintiff's Amended Complaint[2] [ECF No. 1] was an improper, shotgun pleading and directed

---

[1]     Plaintiff's prior pleadings asserted claims against Chief of Police Alexander Rolle. The Second Amended Complaint, however, does not assert <u>any</u> cause of action against him or otherwise identify him as a defendant. *See, e.g.*, ECF No. 32, ¶ 2. Thus, Plaintiff appears to have dismissed Chief Rolle (though he has not done so formally via a notice of dismissal). In abundance of caution, however, Chief Rolle adopts the arguments raised herein.

[2]     Plaintiff's Amended Complaint was his first pleading filed, following his voluntary severance of claims from *William Rea, et al. v. City of Homestead et al.*, Case No. 21-cv-20488-

Plaintiff to amend his pleading, explicitly cautioning that Plaintiff may make "a <u>final</u> amendment to cure all deficiencies, if they are able to do so." ECF No. 31 (emphasis in original).

Plaintiff's operative pleading now asserts Section 1983 claims against the Homestead Defendants, based on First Amendment violation against Det. Rivera (Count I) and Det. Mead (Count II) (in relevant part to this Motion). He also continues to maintain a *Monell* claim against the City (Count V). Although Plaintiff has appeared to have cured the shotgun pleading issue, he has still failed to cure the other deficiencies identified in the Homestead Defendants' prior motion to dismiss [ECF No. 21], namely, to state a claim pursuant to Section 1983 against the City and Detectives Rivera and Mead. In addition, the revised pleading clearly reflects that the claims against Detectives Rivera and Mead are barred by qualified immunity.

Accordingly, in light of Plaintiff's multiple opportunities to state a claim and the Court's explicit warning that the Complaint, as amended, would be Plaintiff's final opportunity to state a claim, dismissal with prejudice is merited.

## ARGUMENT

I.    **PLAINTIFF FAILS TO STATE A FIRST AMENDMENT CLAIM AGAINST DETECTIVES RIVERA AND MEAD.**

Counts I and II against Detectives Rivera and Mead, respectively, are Section 1983 claims for First Amendment violations based on an alleged "improper investigation of Plaintiff in retaliation" for Plaintiff's protected activities. *See* ECF No. 32, subheadings of Counts I and II.

---

KMM ("Original Action"). The Original Action included four other plaintiffs: William Rea, Ednamarie Hernandez, and James and Vanessa McDonough. The Original Action remains pending, and William Rea is the sole remaining plaintiff. *See* Original Action, ECF No. 22. In addition to Plaintiff, the other three plaintiffs in the Original Action also severed their claims from the Original Action and initiated separate lawsuits. *See James & Vanessa McDonough v. City of Homestead, et al.*, Case No. 21-cv-21538-KMM; *Endamarie Hernandez v. City of Homestead, et al.*, Case No. 21-cv-21536-MGC.

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

Specifically, Plaintiff alleges that he engaged in First Amendment speech by writing Facebook posts in 2017, criticizing "significant construction projected" and "other government abuse in Homestead," and against in 2019 about "the defamation and police harassment" that he and his family allegedly felt from the City's Police Department.  ECF No. 32, ¶¶ 26, 27.  Plaintiff also announced his campaign for City mayor in 2019, and his campaign included criticism of the Homestead government and management.  ECF N. 32, ¶¶ 28, 59, 69.

> Plaintiff claims that, as a result of his speech, Detectives Rivera and Mead
>
> retaliated against Plaintiff by conducting a retaliatory and clandestine investigation without a legitimate law enforcement purpose, keeping it off the books, but provided the results of this investigation which included false and/or misleading statements and/or arrangements of documents to his supervisor Gretsas. Defendant[s Rivera and Mead were] directed to perform this improper investigation by Defendant Gretsas and/or Chief Rolle, and Defendant[s Rivera and Mead were] aware that the Dossier [they] helped construct contained false and misleading material and would be used to harm and defame Plaintiff.

ECF No. 32, ¶¶ 60, 70.  Based on these alleged facts, Plaintiff claims the Detectives violated his First Amendment rights.  However, a plain reading of the Complaint reflects Plaintiff has failed to state a claim against them.

> To state a First Amendment claim,
>
> A plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."  It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury.  Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted); *accord DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019) ("[I]f the defendant would have taken the same action had there not also been a retaliatory animus motivating that conduct[,] then the defendant is not liable.").

3

Of noteworthy importance—and fatal to the First Amendment claim—is what Plaintiff *does not allege* against Detectives Rivera and Mead.   He does *not* allege that either detective created or authored any false or misleading material about him.[3]   *See generally*, ECF No. 32.  He does *not* allege any facts about *how* the investigation lacked a "legitimate law enforcement purpose."  *Id.*  He does *not* allege that either detective *published* any false or misleading material about him.  *Id.*  And, critically, **he does not allege that Detective Rivera or Detective Mead acted with retaliatory motive in conducting their "investigation," as he cannot**.  *Id.*  Plaintiff alleges the investigation was conducted at the direction of Gretsas, but nowhere does he allege that either detective acted on said "direction" with a retaliatory animus or motive.  *Nieves*, 139 S. Ct. at 1722 (requiring a retaliatory motive to state a claim); *Gudger v. Pugh*, No. 3:16CV98/RV/EMT, 2018 WL 3463311, at *4 (N.D. Fla. June 19, 2018), *report and recommendation adopted*, No. 3:16CV98/RV/EMT, 2018 WL 3458486 (N.D. Fla. July 18, 2018) ("[B]road, conclusory allegations of retaliation are insufficient to state a claim under section 1983.").

Finally, absent from the Complaint are any facts connecting the detectives' alleged investigation of Plaintiff to any damages he purportedly suffered.   Indeed, not only was the information allegedly uncovered by the detectives *true* (*see* fn. 3, *supra*), but Plaintiff himself alleges the detectives' investigation was "clandestine."  ECF No. 32, ¶¶ 31-34, 59, 69.  How Plaintiff could suffer damages based on actions he himself alleges were done in secret is wholly unclear.  The law is clear that uncovering news—a year (or, in some instances, more than a year)

---

[3]    In fact, *none* of information and/or investigations allegedly gathered or conducted by Detectives Rivera and Mead is false or misleading.  *See* ECF No. 32, ¶ 31 (investigations of court records in Tennessee and North Carolina); ¶¶ 32-33 (following and photographing Plaintiff and his associates); ¶ 34 (Det. Rivera's alleged access of DAVID/NCIC/FCIC databases); ¶ 35 (Det. Mead's receipt of suspicious banking activing reports regarding Plaintiff).  There is no information or aspect of the *Detectives'* alleged investigation in the Complaint that Plaintiff claims false or misleading.

after engaging in protected speech—about an investigation is too trivial and minor to chill or deter the exercise of constitutionally protected speech. *See Naucke v. City of Park Hills*, 284 F.3d 923, 927–28 (8th Cir. 2002) (holding the city council's offensive, unprofessional, and inappropriate actions and conduct—including conducting a public audit of an organization the plaintiff ran, publicly scolding her at city council meetings, publicly calling her names, and circulating false information about her family—did not constitute adverse action for purposes of First Amendment retaliation claim); *Joyner v. City of Atlanta*, No. 1:16-cv-1780, 2018 WL 1442931, at *9 (N.D. Ga. Feb. 23, 2018) (dismissing First Amendment claim, in part, because the plaintiff did not present nor did the court locate "any case law supporting the notion that being subjected to [] an [unjustified] investigation was materially adverse or would be enough to dissuade an employee from exercising his First Amendment rights." (collecting cases)).   Stated differently, the investigation, which was admittedly unknown to Plaintiff for a couple of years and resulted in no adverse consequences, does not satisfy the adverse action prong of his claim.

Plaintiff's own allegations, moreover, reflect the fact that his speech was not chilled as a result of any "clandestine" investigation.  Specifically, the alleged retaliatory investigation began on June 4, 2018.  ECF No. 32, ¶ 31.  However, Plaintiff concedes he continued to exercise his free speech rights by criticizing Gretsas and the City in May and July 2019 – long after the alleged retaliatory actions.  ECF No. 32, ¶¶ 27–28.  It cannot be disputed—based on the allegations of the Complaint—that Plaintiff's speech occurred *after* the launch of the (alleged) retaliatory investigation.   Thus, there are no facts supporting the allegations that the Detectives' "retaliatory actions" would chill the exercise of free speech, as the Complaint is replete with allegations that Plaintiff continued to exercise his First Amendment rights for years after the "clandestine investigation" started. *Id.* ¶¶ 61, 71; *see also Tucker v. Fla. Dep't of Transp.*, 678 F. App'x 893,

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

896 (11th Cir. 2017) ("Logic dictates that the protected conduct must precede the act of retaliation.").

Accordingly, absent any allegations of the detectives' retaliatory motive or damages as a result of the detectives' alleged actions, Plaintiff's First Amendment claims against Defendants fail to state a cause of action pursuant to Rule 12(b)(6), Fla. R. Civ. P.

## II.    THE DETECTIVES ARE FURTHER ENTITLED TO DISMISSAL BASED UPON QUALIFIED IMMUNITY.

### a.    *The Qualified Immunity Standard.*

"Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Hope v. Pelzer*, 536 U.S. 730, 752 (2002) (internal quotation marks omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . ." *Lee v. Ferraro*, 284 F.3d at 1194.

To be entitled to qualified immunity, the defendant-public official must first show that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. *Lee*, 284 F.3d at 1194. Once the defendant meets this burden, the burden shifts to plaintiff to establish both (1) that a constitutional right was violated and (2) that the constitutional right was clearly established at the time the official acted. *Id.*; *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). Clearly established law "should not be defined at a 'high level of generality,'" but "must be 'particularized' to the facts of the case." *White v. Pauley*, 137 S. Ct. 548, 551-52 (2017) (quoting *Ashcroft v. al-Kidd*, 63 U.S. 731, 742 (2011)). If the plaintiff cannot establish either element, qualified immunity is appropriate. *See Pearson v. Callahan*, 555 U.S. 223, 226 (2009).

**b.** ***The Detectives Acted in the Course and Scope of Their Discretionary Authority at All Times Alleged in the Complaint.***

"To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Habert Int'l Inc. v. James*, 1567 F.3d 1271, 1282 (11th Cir. 1998). "In other words, '[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Estate of Cummings v. Davenport*, 906 F.3d 932, 941 (11th Cir. 2018) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (quoting *Holloman*, 370 F.3d at 1266).

In the instant case, it is irrefutable that the detectives were acting within the scope of their discretionary authority during the events alleged.  *See Lee*, 284 F.3d at 1194.  Indeed, Plaintiff **_affirmatively alleges_** that Detective Rivera and Detective Mead acted within the scope of their employment.  ECF No. 32, ¶ 24.  The actions purportedly taken by the detectives – an investigation pursuant to their authority as law enforcement – irrefutably falls within their discretionary authority.  Accordingly, the burden now shifts to Plaintiff to show that his allegations rise to a level reflecting a violation of clearly established law, which Plaintiff cannot do.  *Lee*, 284 F.3d at 1194 (discussing qualified immunity's burden shifting standard).

### c. *Plaintiff Does Not Allege A Violation Of Clearly Established Law.*

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 n.4 (11th Cir. 1997) (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n. 7 (11th Cir. 1996)). The Supreme Court has reiterated "the longstanding principle that 'clearly established law" should not be defined 'at a high level of generality.'" *White*, 137 S. Ct. at 551-52. Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Moreover, the question of clearly established law "turns on the law at the time of the incident, and "the district court must consider the law 'in light of the specific context of the case, not as a broad general proposition . . . .'" *Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Thus, Plaintiff must point to a case from the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, or the Florida Supreme Court "where an officer acting under similar circumstances was held to have violated the [First] Amendment." *See id.* at 552; *see also Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993). Plaintiff, therefore, must identify on-point precedent prior to the events in question, which Plaintiff cannot do.

The Eleventh Circuit has *explicitly* held that the "right to be free from a retaliatory investigation is not clearly established." *Rehberg v. Paulk*, 611 F.3d 828, 850–51 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012) (reversing denial of motion to dismiss and finding investigators entitled to qualified immunity). "The Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort, and neither has this Court." *Id.* at 851 (citing *Hartman v.*

*Moore,* 547 U.S. 250, 262 n.9 (2006) ("No one here claims that simply conducting a retaliatory investigation with a view to promote a prosecution is a constitutional tort.")).  Moreover,

> The initiation of a criminal investigation in and of itself does not implicate a federal constitutional right. The Constitution does not require evidence of wrongdoing or reasonable suspicion of wrongdoing by a suspect before the government can begin investigating that suspect.  No § 1983 liability can attach merely because the government initiated a criminal investigation.

*Rehberg*, 611 F.3d at 850 (citing *United States v. Aibejeris,* 28 F.3d 97, 99 (11th Cir. 1994)).  In the years since *Rehberg*, the Eleventh Circuit and district courts within the Eleventh Circuit, as recently as 2018, have reiterated this holding.  *See Thompson v. Hall*, 426 F. App'x 855, 859 (11th Cir. 2011) (reversing district court's denial of qualified immunity at motion to dismiss stage and holding law enforcement officers were entitled to qualified immunity for allegedly carrying out an investigation in retaliation for the plaintiff's comments at a town hall meeting); *Joyner v. City of Atlanta*, No. 1:16-CV-1780-TWT-LTW, 2018 WL 1442931, at *6 (N.D. Ga. Feb. 23, 2018), *report and recommendation adopted*, No. 1:16-CV-1780-TWT, 2018 WL 1427941 (N.D. Ga. Mar. 22, 2018) (awarding qualified immunity in First Amendment retaliatory investigation claim to officers because the plaintiff "cannot establish that his right to not be subjected to what he characterized as an unjustified investigation was clearly established").  The Homestead Defendants have not located any subsequent authority to the contrary.

Plaintiff's claims against Detective Rivera and Detective Mead are *explicitly* based on a purported "retaliatory" investigation, which Plaintiff claims lacked a "lawful purpose."  ECF No. 32, ¶¶ 60, 70.  In light of the *absence* of clearly established law that an alleged, retaliatory investigation violates the First Amendment – and indeed, given the precedent recognizing the lack of such a constitutional tort (*see Rehberg*, 611 F.3d at 850; *Thompson*, 426 F. App'x at 859),

Detective Rivera and Detective Mead are entitled to qualified immunity, and the claims against them should therefore be dismissed with prejudice.

**III.    PLAINTIFF'S SECTION 1983 CLAIMS FAIL TO STATE A CAUSE OF ACTION.**

      **a.    *Plaintiff Has Not and Cannot State a <u>Monell</u> Claim Against the City.***

            *1.    <u>The strict limitations on municipal liability under Section 1983.</u>*

The Supreme Court has placed strict limitations on municipal liability under Section 1983. *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1993). To impose liability against the City, Plaintiff must demonstrate: (1) that his constitutional rights were violated, (2) that the City had a custom or policy that constituted deliberate indifference to those constitutional rights, and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Sanchez v. Miami-Dade Cty.*, No. 07-21717, 2007 WL 1746190, at *3 (S.D. Fla. 2007) (stating "proof of 'a single incident of unconstitutional activity' cannot suffice under *Monell* to impose liability" on a municipality) (quoting *City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985)). <u>These principles have long been recognized as a pleading requirement and failure to properly allege a custom or policy routinely results in dismissal</u>. *See, e.g., Vila v. Miami-Dade Cty.*, No. 14-21346, 2014 WL 6976273, at *6 (S.D. Fla. Nov. 25, 2014); *Perez v. City of Miami*, No. 10-21179, 2011 WL 772858 (S.D. Fla. Feb. 28, 2011); *Andrade v. Miami-Dade Cty.*, No. 09-23220, 2011 WL 4345665, at *8 (S.D. Fla. Sept. 16, 2011).

A municipality may be held liable "only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-established that it assumes the force of law." *Denno v. School Bd. of Volusia Cty.*, 218 F.3d 1267, 1276 (11th Cir. 2000), *cert. denied*, 531 U.S. 958

(2000).  To demonstrate a pervasive practice, a plaintiff must show a persistent and widespread practice with actual or constructive knowledge of such by the City's governing board. Accordingly, without an official policy (which Plaintiff has not and cannot allege), a *Monell* claim cannot be demonstrated in the absence of other incidents involving factual situations that are substantially similar to the case at hand.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1161-62 (11th Cir. 2005).

Finally, even if a sufficient municipal policy, custom or practice is established, a plaintiff still has the substantial burden to demonstrate that the policy, custom or practice was the "moving force," or "driving force" behind the plaintiff's constitutional injury.  *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997); *McDowell*, 392 F.3d at 1292.  The Supreme Court has required that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Brown*, 520 U.S. at 405. "This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to respondeat superior liability – a result never intended by section 1983."

> 2. *Plaintiff's Claim Against the City Fails under any Theory of Liability Because There Is No Underlying Constitutional Violation.*

At the outset, Plaintiff cannot state a Section 1983 claim against the City because no underlying constitutional is alleged in Count V or otherwise occurred.  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (noting the first element of a *Monell* claim is a violation of a constitutional right); *Johnson v. Darnell*, No. 1:17-CV-87-MW-GRJ, 2018 WL 3672759, at *9 (N.D. Fla. July 13, 2018), *report and recommendation adopted*, No. 1:17CV87-MW/GRJ, 2018 WL 3660356 (N.D. Fla. Aug. 2, 2018), *aff'd*, 781 F. App'x 961 (11th Cir. 2019) (granting motion

to dismiss because the plaintiff had "failed to establish the first element of a *Monell* claim because he has failed to show that his constitutional rights were violated"). Specifically, Count V is based on an alleged "custom and practice" of investigating Plaintiff. ECF No. 32, ¶ 108. As discussed, *supra*, there is no constitutional violation for the initiation of a criminal investigation, which the Eleventh Circuit has <u>explicitly</u> stated does <u>not</u> require evidence of wrongdoing to commence (contrary to Plaintiff's claims). *Rehberg*, 611 F.3d at 850 (citing *Aibejeris*, 28 F.3d at 99). The mere claim that the City had a pattern and practice of improperly investigating Plaintiff lacks any underlying constitutional violation and, therefore, Plaintiff has failed to state a *Monell* claim against the City.

### 3. *Plaintiff's Final Policymaker Claim Fails as a Matter of Law.*

Notwithstanding the absence of an underlying constitutional violation, Plaintiff has failed to state a final policymaker claim, to the extent this theory is alleged. "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury th[en] the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Under a final policymaker theory, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986).

"The mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989) (citation omitted). The "Eleventh Circuit 'has interpreted *Monell's* policy or custom requirement to preclude § 1983 municipal

liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion.'" *Quinn v. Monroe Cty.*, 330 F.2d 1320, 1325 (11th Cir. 2003) (quoting *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997)); *see also Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997) (stating no final policy authority exists where the officials decision are subject to, or constrained by, "meaningful administrative review.").

Plaintiff claims that the City, "acting through its Manager, and possibly Chief and Council, created and ordered a custom of abuse, having the force and effect of law, which constituted and evinced deliberate indifference to Plaintiff's constitutional rights." ECF No. 32, ¶ 107.  First, Plaintiff's Complaint lacks <u>any</u> factual allegations whatsoever regarding what decision, action, or other affirmative steps the Chief of Police or the City Council took that would even resemble a municipal policy (as they cannot).  *Id.*, ¶¶ 95-111.

Second, Plaintiff's claim that Gretsas acted as a final policymaker is insufficient to establish that <u>any</u> of his alleged actions rise to the level of an <u>official</u> City custom or policy. Specifically, Plaintiff claims the "custom" established by Gretsas as a final policymaker was "investigating Plaintiff" – which Defendants have repeatedly shown herein is <u>not</u> a constitutional violation – and "communicating the improperly gathered information with a false narrative to harm Plaintiff[]."  ECF No. 32, ¶ 108.  The latter claim is clearly insufficient to establish a final policymaker action, as opposed to a mere claim based on *respondeat superior*, which is insufficient under *Monell. Pembaur*, 475 U.S. at 479-80 (acknowledging that municipal liability cannot be based on a theory of *respondeat superior*).

The requirement of an official policy or custom is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

liability is limited to action *for which the municipality is actually responsible.*" *Grech,* 335 F.3d at 1329 n. 5 (emphasis in original) (internal citations and quotations omitted).  Indeed, Plaintiff conflates the concepts of "final policymaking" with "decision making."  The former requires that an individual's actions function as final policy "only if his decisions have legal effect without further action by the governing body . . . and if the governing body lacks the power to reverse the member or employee's decision." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004) (internal quotation marks and citations omitted).  "The 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held *individually* liable. *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1326 (11th Cir. 2003) ("While the [county] manager should not be able to create *municipal* liability when violating official policy, he should not be able to elude *individual* liability for his own unlawful actions"); *S. Atl. Companies, LLC v. Sch. Bd. of Orange Cty., Fla.*, 699 F. App'x 842, 846 (11th Cir. 2017) (holding the general counsel's alleged decision-making authority over settlements and assignments was not plenipotentiary and, therefore, the final policymaker failed to state a claim).

Plaintiff's "improper communication" theory is essentially that Gretsas shared information about Plaintiff to individuals within the City (ECF No. 32, ¶ 53) and third parties.  ECF No. 32 ¶¶ 46-54. Clearly, mere communications with others (within the City or otherwise) does *not* rise to the level of *a municipal custom or policy*, but merely a discretionary decision exercised by Gretsas, for which *Monell* liability cannot be established.  Indeed, if the mere exercise of discretion by an employee about *who* they speak to or the content of that speech could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) (discussing final policymaking analysis in First Amendment retaliation claim against municipality).  Indeed one employee's communications to

third-parties regarding another individual are clearly not municipal *policies*. Accordingly, Plaintiff's final policymaker theory fails as a matter of law.

### 4.   Plaintiff Has Otherwise Failed to Allege a Sufficient Theory of Liability Under *Monell.*

Although Count V appears to be based on a final policymaker theory of *Monell* liability, to the extent Plaintiff's claim could construed as based on a purported, unofficial pattern and practice theory, this cause of action also fails. *See* ECF No. 32, ¶¶ 95-111. In addition to Plaintiff's failure to allege an underlying constitutional violation, he fails to meet the stringent standard of pleading a *Monell* claim (as did his prior Section 1983 claims against the City).

Specifically, Plaintiff has failed to allege the requirement widespread practice under *Monell*. Indeed, a plaintiff's own, allegedly unconstitutional events are insufficient to establish a persistent and widespread practice. *Asia v. City of Miami Gardens*, No. 14-civ20117, 2016 WL 739656, at *8 (S.D. Fla. Feb. 25, 2016); *Wakefield v. City of Pembroke Pines*, 269 F. App'x 936, 940 (11th Cir. 2008) (finding the plaintiff's own alleged events with police officers insufficient to show a pattern or practice). To sufficiently demonstrate a custom or practice that "assumes the force of law," Plaintiff must provide proof of "other incidents involving factual situations that are *substantially similar* to the case at hand." *Mercado v. City of Orlando*, 407 F.3d 1152, 1161–62 (11th Cir. 2005) (emphasis added). Proof of random acts or isolated incidents will not suffice. *See Sanchez v. Miami-Dade Cty.*, 2007 WL 1746190, at *3 (S.D. Fla. 2007) (stating that "proof of 'a single incident of unconstitutional activity' cannot suffice under *Monell* to impose liability" on a municipality). Moreover, these past, similar incidents must have been actual constitutional violations, rather than just complaints of misconduct. *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("Indeed, the number of complaints bears no relation to their validity."); *Asia*, 2016 WL 739656, at *8 ("Plaintiff has failed to present any evidence of prior incidents of constitutional

injuries similar to his, and his own experience with the City's police officers is insufficient to establish a custom or practice.").

Plaintiff appears to make a futile and cursory effort to satisfy this requirement (which is wholly insufficient) by stating that the City's

> custom and pattern is further elucidated by similar violations of constitutional rights with regard to William Rea, Eric[] and Vanessa McDonough, and Ednamarie Hernandez, which are more fully alleged in the original Complaint in this matter and in separate legal actions brought by them against the various Defendants named herein. In each described case, the City, by and through its ex-manager Gretsas and/or Chief Rolle and Council, and their subordinates, retaliated against various Plaintiffs for their exercise of First Amendment Rights.

ECF No. 32, ¶ 110. However, references to prior, unsubstantiated allegations of improper conduct, including references to William Rea, Eric and Vanessa McDonough and Ednamarie Hernandez (all of who are represented by Plaintiff's same attorney and all of whom have likewise made unsubstantiated claims) "*are also insufficient on their own to establish a 'persistent and widespread practice'* in [a municipal entity] as a whole." *Asia*, 2016 WL 739656, at \*8 (emphasis added) (discussing *Monell* claims based on use of force).

In addition, Plaintiff's original Complaint in this matter was dismissed as a shotgun pleading [ECF Nos. 1, 31], as was at least one other pleading referenced in Plaintiff's allegation, namely, the complaint filed by Plaintiff, William Rea.[4] Neither Defendants nor, more importantly, the Court should be expected to rifle through allegations previously dismissed as non-compliant with the federal pleading standard like a truffle-hunting pig. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Vague references to claims previously dismissed in both this action and others are wholly insufficient to meet the strict requirement that Plaintiff allege other, factually similar incidents to show a

---

[4]     *See William Rea, et al. v. City of Homestead et al.*, Case No. 21-cv-20488-KMM, ECF No. 36.

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

widespread custom or practice.  *Mercado*, 407 F.3d at 1161–62 (emphasis added).  Accordingly, Count V wholly fails to state a claim on any theory of *Monell* liability.

WHEREFORE, Defendants, City of Homestead, Detective Tom Mead, and Detective Ricky Rivera request that the Court grant this Motion, dismiss the Second Amended Complaint with prejudice [ECF No. 32], and award any further relief that the Court deems just and proper.

Dated: August 23, 2021                                    Respectfully submitted,

WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
*Counsel for the Homestead Defendants*
200 East Broward Boulevard, Suite 1900
Fort Lauderdale, FL  33301
Telephone: 954-763-4242
Facsimile:  954-764-7770

By: */s/ Anne R. Flanigan*
    MATTHEW H. MANDEL
    Florida Bar No.  147303
    Primary e-mail: mmandel@wsh-law.com
    Secondary e-mail: lbrewley@wsh-law.com
    SAMUEL I. ZESKIND
    Florida Bar No. 43033
    Primary e-mail: szeskind@wsh-law.com
    Secondary e-mail: ozuniga@wsh-law.com
    ANNE R. FLANIGAN
    Florida Bar No.  113889
    Primary e-mail: aflanigan@wsh-law.com
    Secondary  e-mail:  pgrotto@wsh-law.com
    JOSEPH H. SEROTA
    Florida Bar No. 259111
    Primary e-mail: jserota@wsh-law.com
    Secondary e-mail: lmartinez@wsh-law.com